UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X   **Index No.:** 21-cv-9252

HEATHER BEARDEN,

                        Plaintiff,                        **COMPLAINT**

        - against -

                                       **PLAINTIFF DEMANDS**

SP0N, INC. d/b/a CITIZEN,                 **A TRIAL BY JURY**

                        Defendant.

-------------------------------------------------------------------------X

      HEATHER BEARDEN ("Plaintiff"), by and through her attorneys, PHILLIPS & ASSOCIATES, PLLC, against SP0N, INC. d/b/a CITIZEN ("Defendant"), alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

### NATURE OF THE CASE

1.    This is a civil action based upon violations that Defendants committed of Plaintiff's rights guaranteed to her by: (i) the race and sexual  discrimination and retaliation provisions of **42 U.S.C.** § 1981 ("Section 1981") (ii) the race and sexual orientation discrimination and retaliation provisions of the **New York State Human Rights Law**, New York State Executive Law, § 296 *et seq.* ("NYSHRL"); (iii) race and sexual orientation discrimination and retaliation provisions of the **New York City Human Rights Law**, New York City Administrative Code § 8-107 et seq. ("NYCHRL") and (iii) any other claim(s) that can be inferred from the facts set forth herein.

2.    Plaintiff seeks redress for the injuries she has suffered as a result of her employer's **discrimination and retaliation** solely on the basis of her race and sexual orientation, as Defendant subjected Plaintiff to racial epithets, homophobic slurs, such as "FAGGOT," hate

speech and other offensive comments from Defendant's electronic application users, and by subjecting Plaintiff to racial stereotypes and offensive comments about her race, a hostile work environment, wherein Defendant verbally abused, ostracized and humiliated Plaintiff in front of her coworkers, due to her race and sexual orientation.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is invoked pursuant to 42 U.S.C. §2000e-5(f)(3), and 28 U.S.C. § 1331 and 1343.

4. The Court has supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. §1367.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

6. Plaintiff is a Black and Native American, gay, female, and is a resident of the State of New York, Kings County. At all relevant times herein, Plaintiff was and is a "person" and "employee" of Defendant entitled to protection as defined by NYSHRL, and NYCHRL.

7. Upon information and belief, at all relevant times herein, Defendant was and is a Delaware corporation, organized under the laws of Delaware, with its principal place of business located at 11 Broadway, 21st and 22nd Floor, New York, New York 10004.

8. At all times relevant herein, Plaintiff was an employee of Defendant.

## MATERIAL FACTS

9. On or about November 4, 2019, Defendant employed Plaintiff as a Central Analyst earning $64,000, annually.

10. Upon information and belief, Defendant created and implements a computer application ("app") that sends users real-time safety alerts and live video of dangerous incidents

("incidents") alerting app users in close proximity to such incidents.

11.     Plaintiff's direct supervisors were Samuel Osterling ("Osterling"), Manager of the Overnight Shift, and Lenny BeckRoda ("BeckRoda"), Head of Central Operations. Osterling and BeckRoda both had the ability to make decisions regarding the terms and conditions of Plaintiff's employment.

12.     Plaintiff underwent training from on or about November 4, 2019, through on or about November 16, 2019. On or about November 17, 2019, Plaintiff worked her first overnight shift as a Central Analyst.

13.     Plaintiff's duties included, but were not limited to, communicating with Defendant's app users and transmitting alerts and updates to said app users.

14.     From the start of and throughout her employment, Defendant subjected Plaintiff to a hostile work environment fraught with racial epithets, homophobic slurs, hate speech and offensive language through the unmonitored comments published by Defendant's app users. Defendant's app users used homophobic slurs, including the word "FAGGOT," and advocated for violence, including the shooting of Black people.

15.     Defendant failed to monitor comments made by its app users and failed to implement a policy against hate speech.

16.     On or about January 2020, Plaintiff complained about the discriminatory and offensive language and hate speech, and supported Defendant's Community Engagement Analyst's, Nina's [Last Name Unknown] ("Nina"), suggestion for Defendant to implement a zero-tolerance policy towards hate speech by Defendant's app users.

17.     Defendant disregarded and ignored Plaintiff's concerns. Plaintiff continued to be subjected to hate speech and offensive comments from Defendant's app users throughout her employment,

until Defendant implemented a hate speech policy in June 2020.

18.    In addition to the racial and sex discrimination Plaintiff endured from Defendant's app users, Defendant subjected Plaintiff to racial and sex discrimination from Defendant's staff.

19.    From the start of and throughout her employment, Defendant subjected Plaintiff to more harsh treatment than her white, heterosexual counterparts.

20.    Defendant subjected Plaintiff to a more heightened level of supervision, micro-management and scrutiny than her white heterosexual counterparts. Additionally, Defendant reprimanded and criticized Plaintiff more harshly than her white heterosexual counterparts. Defendant routinely ostracized and humiliated Plaintiff by negatively criticizing Plaintiff's work, publicly, in front of all of her colleagues at staff meetings.

21.    In or about December 2019, Plaintiff reported Defendant's racial discrimination towards her to "Lead"/"Shift Manager," Karis Rogers ("Rogers"). Plaintiff informed Rogers that she was the only Black and Native American employee on the nightshift and was being targeted, ostracized and treated more harshly than her white counterparts.

22.    Rogers, despite her duty to report Defendant's conduct to the appropriate authority, failed to do so. Rogers completely disregarded and ignored Plaintiff's complaint and placed blame on Plaintiff, by stating Plaintiff was "trying to throw someone under the bus." Plaintiff reported that she did not feel safe at work.

23.    Upon information and belief, despite Rogers' duty to report Defendant's conduct to the appropriate authority, Rogers failed to do so. Instead, Rogers told Plaintiff "if you want to feel safe at work, you have to create safety in the workplace yourself."

24.    Shortly thereafter, Plaintiff reported Defendant's racial and sex discrimination to Osterling, and further reported that she was gay. Rogers disregarded and ignored Plaintiff's complaint.

25.     Upon information and belief, Osterling, despite his duty to report Defendant's conduct to the appropriate authority, failed to do so. Osterling directed Plaintiff to report her complaint to BeckRoda.

26.     On or about December 18, 2019, Plaintiff reported Defendant's racial and sex discrimination to BeckRoda. Plaintiff further reported Rogers' comments and that Rogers disregarded and ignored her complaints. BeckRoda stated to Plaintiff "I believe you, but you have to write to HR. I am going to treat this as a communication issue and talk to Karis to help her understand that she can't speak to people in that manner."

27.     Upon information and belief, BeckRoda, despite his duty to report Defendant's conduct to the appropriate authority, failed to do so.

28.     Defendant disregarded and ignored Plaintiff's multiple complaints. Defendant never investigated the matter.

29.     On or about January 2020, Defendant subjected Plaintiff to racial stereotypes and racially offensive comments when Plaintiff's co-workers disseminated a "spirit animal quiz" in Defendant's Slack, electronic chatroom. Defendant's employees made offensive comments, mocking, demeaning, and marginalizing some Native American culture and belief systems, which includes belief in spirit animals. Defendant's employees stated, for example, "how am I not a frog wtf."

30.     As noted above, Plaintiff is Black and Native American, and identifies as part of a bear clan. Plaintiff was deeply offended by her co-workers mocking her belief in spirit animals and admonished her co-workers for their racial insensitivity. Plaintiff's co-workers, however, disregarded and ignored her comments and stated "this is the equivalent of a buzzfeed quiz; it's not meant to be taken seriously." Plaintiff's co-workers continued with their racially

insensitive comments, including, but not limited to the following: "Wow Erek you're an owl," "aye butterfly brother," "you're the owl," "@Heather what spirit animal were you given?"

31.     Shortly thereafter, Plaintiff complained to BeckRoda about the racially insensitive comments and stereotyping about spirit animals she was subjected to in Defendant's Slack electronic chatroom.

32.     Upon information and belief, BeckRoda, despite his duty to report Defendant's conduct to the appropriate authority, failed to do so.

33.     On or about February 2020, Defendant promoted Falyn [Last Name Unknown] ("Falyn") and assigned Falyn to oversee Plaintiff's department. Falyn ostracized Plaintiff, ridiculed and derided Plaintiff in front of Plaintiff's co-workers, and encouraged Plaintiff's co-workers to criticize Plaintiff's work. Plaintiff's white, heterosexual counterparts were not ostracized, ridiculed, derided or criticized like Plaintiff.

34.     On or about March 2020, Defendant promoted Scott Dyer ("Dyer"), a white heterosexual male to Lead/Shift Manager of the overnight shift. Dyer immediately began to assign Plaintiff a greater workload than he assigned Plaintiff's white, heterosexual counterparts.

35.     On or about April 2020, Plaintiff complained to Defendant again about Defendant's failure to address racial insensitivity and discrimination within the workplace. Defendant disregarded and ignored Plaintiff's complaints and suggestions for remedial measures.

36.     On or about May 2020, Defendant published a new position. Plaintiff informed BeckRoda that she would like to apply for the position and inquired about the application process. BeckRoda discouraged Plaintiff from applying, stating "there is no need to apply…we already know you."

37.     Shortly thereafter, Plaintiff inquired about the position with Manager, Morgan Matthieson ("Matthieson"). Matthieson stated that Defendant would not consider anyone from Plaintiff's

department for the position.

38.   Upon information and belief, Defendant selected two white, heterosexual men, who were less qualified than Plaintiff, for the above-mentioned position.

39.   On or about August 2020, Defendant further subjected Plaintiff to racial stereotypes and offensive comments, when Dyer announced the recent termination of a Black, gay male employee. Dyer commented that the Black gay male was "lazy" and "liked to smoke marijuana" and sleep on the job, further perpetuating racial stereotypes of Black men.

40.   Plaintiff reported Dyer's comments to Osterling. Osterling disregarded and ignored Plaintiff's comments.

41.   Upon information and belief, Osterling, despite his duty to report Defendant's conduct to the appropriate authority, failed to do so.

42.   Approximately one month after Plaintiff's August 2020 complaints of racial discrimination to Osterling, Dyer falsely reported that Plaintiff was sleeping while on duty to Osterling. Consequently, Osterling yelled at Plaintiff and reprimanded her.

43.   Approximately one month after Plaintiff's August 2020 complaints of racial discrimination, Defendant retaliated against Plaintiff and issued Plaintiff a negative write-up. The pretextual reasons given for the write-up was that Plaintiff fell asleep while working and failed to report an incident during her shift. Defendant did not discipline white heterosexual counterparts in the same manner.

44.   On or about October 2020, after Defendant continued to disregard and ignore Plaintiff's multiple complaints of discrimination, Plaintiff was unable to endure the discrimination and hostile work environment Defendant subjected her to. Plaintiff, therefore, was forced to resign.

45.   Under such circumstances, any reasonable person like Plaintiff, would have felt compelled to

resign. Consequently, Plaintiff's resignation amounts to a constructive termination.

46.    As a result of Defendant's discriminatory and intolerable treatment of Plaintiff, she suffered severe emotional and physical distress, including but not limited to, frequent migraines, difficulty sleeping and fatigue.

47.    As a result of Defendant's actions and conduct, Plaintiff felt humiliated, degraded, victimized, embarrassed, and emotionally distressed.

48.    As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

49.    Defendant's actions and conduct were intentional and intended to harm Plaintiff.

50.    Defendant's conduct was malicious, willful, outrageous, and conducted with full knowledge of the law, and/or violation thereof.

51.    As such, Plaintiff demands punitive damages against Defendant.

## AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER SECTION 1981
*(Racial Discrimination)*

52.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

53.    42 U.S.C. § 1981 states in relevant part as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

54.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 1981, by

discriminating against Plaintiff because of her race (Black and Native American).

55.    Plaintiff was subjected to negative disparate treatment, discrimination, humiliation,

embarrassment, adverse employment actions and loss of employment due to her race.


**AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NYSHRL**
(*Racial Discrimination*)

56.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

complaint.

57.    New York State Executive Law §296(1)(a) provides that:

> It shall be an unlawful discriminatory practice: For an employer or licensing
> agency, because of an individual's age, **race**, creed, color, national origin, sexual
> orientation, military status, sex, disability, predisposing genetic characteristics,
> marital status, or domestic violence victim status, to refuse to hire or employ or to
> bar or to discharge from employment such individual or to discriminate against
> such individual in compensation or in terms, conditions or privileges of
> employment. (emphasis added)

58.    As described above, Defendant discriminated against Plaintiff on the basis of her race (Black

and Native American), in violation of the NYSHRL, by subjecting her to disparate working

conditions, and creating, fostering, condoning, accepting, ratifying, and/or negligently failing

to prevent or remedy a hostile work environment based on her race.

59.    As a result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL,

Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an

award of monetary damages and other relief.

60.    As a result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL,

Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress,

including, but not limited to, physical ailments, depression, humiliation, embarrassment, stress

and anxiety, and emotional pain and suffering, for which she is entitled to an award of monetary

damages and other relief.

61.     Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton

violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NYSHRL
*(Sexual Orientation Discrimination)*

62.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

complaint.

63.     New York State Executive Law §296(1)(a) provides that:

> It shall be an unlawful discriminatory practice: For an employer or licensing
> agency, because of an individual's age, race, creed, color, national origin, **sexual
> orientation**, military status, sex, disability, predisposing genetic characteristics,
> marital status, or domestic violence victim status, to refuse to hire or employ or to
> bar or to discharge from employment such individual or to discriminate against
> such individual in compensation or in terms, conditions or privileges of
> employment. (emphasis added)

64.     As described above, Defendant discriminated against Plaintiff on the basis of her sexual

orientation, in violation of the NYSHRL, by subjecting her to disparate working conditions,

and creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent

or remedy a hostile work environment based on her sexual orientation.

65.     As a result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL,

Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an

award of monetary damages and other relief.

66.     As a result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL,

Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress,

including, but not limited to, physical ailments, depression, humiliation, embarrassment, stress

and anxiety, and emotional pain and suffering, for which she is entitled to an award of monetary

damages and other relief.

67.    Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton

violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.


### AS A FIFTH CAUSE OF ACTION UNDER THE NYSHRL
*(Retaliation)*

68.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

complaint.

69.    <u>New York State Executive Law</u> § 296(7) provides that:

> It shall be an unlawful discriminatory practice for any person engaged in any
> activity to which this section applies to retaliate or discriminate against any person
> because he or she has opposed any practices forbidden under this article or because
> he or she filed a complaint, testified, or assisted in any proceeding under this article.

70.    As described above, Plaintiff engaged in protected activities, including making internal

complaints to her supervisor regarding discrimination.

71.    As described above, after Plaintiff engaged in activity protected by the NYSHRL, Defendant

took adverse actions against Plaintiff -- by, *inter alia*, denying Plaintiff a promotion and

disciplining Plaintiff with a negative write up -- that would dissuade a reasonable employee

from making or supporting a similar complaint of discrimination.

72.    Defendant violated this section as set forth herein.

73.    Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton

violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.


### AS A SIXTH CAUSE OF ACTION UNDER THE NYCHRL
*(Racial Discrimination)*

74.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

complaint.

75.   The Administrative Code of City of New York § 8-107(1)(a) provides that

> It shall be an unlawful discriminatory practice: for an employer or
> an employee or agent thereof, because of the actual or perceived age,
> **race**, creed, color, national origin, gender, disability, marital status,
> partnership status, caregiver status, sexual and reproductive health
> decisions, sexual orientation, uniformed service or alienage or
> citizenship status of any person... to refuse to hire or employ or to
> bar or to discharge from employment such person or to discriminate
> against such person in compensation or in terms, conditions or
> privileges of employment. (emphasis added)

76.   As described above, Defendants discriminated against Plaintiff on the basis of her race in violation of the NYCHRL by, including but not limited to, subjecting her to disparate working conditions, and denying her the opportunity to work in an employment setting free of unlawful discrimination and harassment.

77.   As a result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

78.   As a result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, physical ailments, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

79.   Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## AS A SEVENTH CAUSE OF ACTION UNDER THE NYCHRL
*(Sexual Orientation Discrimination)*

80.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

complaint.

81.     The Administrative Code of City of New York § 8-107(1)(a) provides that

> It shall be an unlawful discriminatory practice: for an employer or
> an employee or agent thereof, because of the actual or perceived age,
> race, creed, color, national origin, gender, disability, marital status,
> partnership status, caregiver status, sexual and reproductive health
> decisions, **sexual orientation**, uniformed service or alienage or
> citizenship status of any person... to refuse to hire or employ or to
> bar or to discharge from employment such person or to discriminate
> against such person in compensation or in terms, conditions or
> privileges of employment. (emphasis added)

82.     As described above, Defendants discriminated against Plaintiff on the basis of her sexual

orientation in violation of the NYCHRL by, including but not limited to, subjecting her to

disparate working conditions, and denying her the opportunity to work in an employment

setting free of unlawful discrimination and harassment.

83.     As a result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL,

Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an

award of monetary damages and other relief.

84.     As a result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL,

Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress,

including, but not limited to, physical ailments, depression, humiliation, embarrassment, stress

and anxiety, and emotional pain and suffering, for which she is entitled to an award of monetary

damages and other relief.

85. Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## AS A EIGHTH CAUSE OF ACTION UNDER THE NYCHRL
(*Retaliation*)

86. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

87. The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice for an employer "to retaliate or discriminate in any manner against any person because such person has opposed any practices forbidden under this chapter…."

88. As described above, Plaintiff engaged in protected activities, including making internal complaints regarding discrimination.

89. As described above, after Plaintiff engaged in activity protected by the NYCHRL, Defendant took adverse actions against Plaintiff -- by, *inter alia*, denying Plaintiff a promotion and disciplining Plaintiff with a negative write up -- that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

90. Defendant violated this section as set forth herein

## JURY DEMAND

91. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Section 1981, New York State Human Rights Law, and New York City Human Rights

14

Law in that Defendant discriminated against Plaintiff, on the basis of her race and sexual orientation, created and maintained a hostile work environment, and retaliated against Plaintiff for engaging in protected activity, engaged in disparate treatment of Plaintiff, and otherwise discriminated against Plaintiff, on the basis of her race and sexual orientation;

B.      Declaring that Defendants engaged in unlawful employment practices prohibited by Section 1981, New York State Human Rights Law, and New York City Human Rights Law in that Defendants retaliated against Plaintiff for making complaints about discrimination;

C.      Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

D.      Awarding Plaintiff compensatory damages for mental, emotional injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

E.      Awarding Plaintiff punitive damages;

F.      Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

G.      Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendant's unlawful employment practices.

Dated: Garden City, New York
       November 2, 2021

**PHILLIPS & ASSOCIATES PLLC**

By: _____/s/_____
Darnisha A. Lewis-Bonilla
*Attorneys for Plaintiff*
585 Stewart Avenue, Suite 410
Garden City, New York 11530
T: (516) 365-3731
F: (212) 901-2107
Dlewis-bonilla@tpglaws.com